```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

MICHAEL SMITH,                                  :

                    Petitioner,                 :

        -against-                               :   REPORT AND RECOMMENDATION

JAMES CONWAY,                                   :       06 Civ. 7674 (RMB)(KNF)

                                                :
                    Respondent.
------------------------------------------------------------ X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RICHARD M. BERMAN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Michael Smith ("Smith"), proceeding pro se, brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The petitioner alleges his confinement by New York State is unlawful because: (1) his deoxyribonucleic acid ("DNA") was seized unlawfully when the police placed a swab in his mouth, without advising him of his rights, including his right to counsel; (2) the trial court erred in empaneling a juror who stated he could not be fair and impartial; (3) the trial court erred in allowing hearsay into evidence, in violation of his confrontation right; and (4) the trial court erred in applying New York's rape shield law.[1] The respondent opposes the petition contending: (a) the petitioner's Fourth Amendment claim is not cognizable on federal habeas corpus review; (b) the petitioner's unfair and partial juror claim is

---

[1] New York Criminal Procedure Law ("CPL") § 60.42.

1

meritless; (c) the trial court admitted certain out-of-court statements into evidence properly because they were not hearsay and Smith's Confrontation Clause claim is procedurally barred and meritless; and (d) the trial court applied New York's rape shield law properly. The petition is addressed below.

## BACKGROUND

In the early hours of October 20, 1998, Smith and Mark Green ("Green") forced D. W.[2] onto an empty bus, parked in a lot on West 40th Street, in New York County. D. W. screamed but the two men hit her with their fists, choked her and knocked her to the bus floor. Smith and Green raped D. W. multiple times while punching her, choking her and smashing her head against the bus floor, because she continued resisting and screaming. After the two men exited the bus, D. W. went to the building in which she lived, where she met an acquaintance who summoned the police. When the police arrived at D. W.'s building, Officers Robert Welsome and Michael Flood ("Flood") asked D. W. to accompany them to the lot where the incident occurred to determine whether she could identify anyone who participated in the sexual assault. D. W. recognized and identified Green as one of the perpetrators. Thereafter, D. W. was transported to a hospital, where she remained for several days and received medical treatment.

After D. W. was taken to a hospital, Flood remained at the crime scene in order to preserve it from contamination prior to its examination by a crime scene detective. While Flood was safeguarding the crime scene, three individuals approached and told him that the second perpetrator of the sexual assault went by the name "Chicago." Flood was unable to ascertain the

---

[2]To protect the victim's privacy, the Court will refer to the victim by her initials. The respondent's motion for an order to file his response and all accompanying documents containing the victim's full name under seal was granted by the Court previously.

identity of those individuals or to elicit more information from them concerning the crime. As Flood left the crime scene and walked toward his car, which was parked in the vicinity, he noticed a broken Walkman and a baseball-style cap with the word "Bulls" on it. Based on the information he received from the unidentified individuals about the identity of the second perpetrator, "Chicago," Flood suspected the cap was a "Chicago Bulls" cap. Therefore, Flood caused the crime scene to be expanded to include the situs of these items, which were taken into police custody. Flood informed other officers, assigned to the area where the assault occurred, that a possible suspect being sought for involvement in D. W.'s rape was known as "Chicago."

On June 19, 1999, Flood received a telephone call from a police officer employed by the Port Authority of New York and New Jersey, who informed Flood that a person known as "Chicago" was in the Port Authority bus station police facility. Flood traveled there and, thereafter, transported the person known as "Chicago" to the Midtown South police precinct. The person known as "Chicago" is Smith. Flood contacted the Manhattan South Special Victims unit and Detective Frank Garrido ("Garrido") joined Flood at the precinct.

Garrido introduced himself to Smith, told him that he was investigating a violent sexual crime and explained that Smith had been detained because the suspect in that investigation went by the name "Chicago," the street name Smith used. Garrido told Smith that he was not under arrest and was free to leave the precinct. Smith stated he did not do anything wrong and volunteered to give a blood sample, by extending his arm to Garrido. Garrido told Smith that a blood sample was not necessary at that time. However, Garrido advised Smith that, if he was willing and voluntarily giving consent, he could donate his saliva for a DNA comparison. Smith agreed. He completed and signed a consent form, provided a buccal swab to Garrido and left the

precinct. Subsequent DNA testing resulted in a match between Smith's DNA and that in the semen found on D. W.'s pants. As a result, Smith was arrested on August 27, 1999.

A New York County grand jury returned an indictment against Smith containing two counts of first-degree rape and two counts of second-degree assault. Smith made a motion to suppress statements he made to the police and physical evidence, including the swab used to obtain his DNA. On February 9, 2000, the Supreme Court, New York County, held a pretrial suppression hearing and denied the motion. A jury trial followed. However, on June 1, 2000, a mistrial was declared.

After eight jurors had been selected during the voir dire for Smith's retrial, the trial court asked the prospective jurors whether they or anyone close to them had been a crime victim. One of the prospective jurors requested an opportunity to speak privately with the court and the parties. That prospective juror informed the court that his father was murdered and his mother wounded during a 1978 robbery. The following colloquy ensued:

> THE COURT: Okay. I know that happened a long time ago, but, of course, one never gets over that. Will that affect your ability to be fair and impartial?[3]
> PROSPECTIVE JUROR: I don't think so.
> THE COURT: And was anyone ever apprehended?
> PROSPECTIVE JUROR: No.
> THE COURT: And is there anything about the investigation that was done that left you with a particular feeling one way or another?
> PROSPECTIVE JUROR: No, since it was a holdup, really, we didn't know about much, but we didn't know who did it or what the circumstances were.

The court asked counsel to the parties if they had any questions for the prospective juror; neither

---

[3]The original transcript reads: "Will you be fair and impartial?" However, after a reconstruction hearing, the record was resettled to reflect that the court's question was as noted above.

4

had any. Subsequently, Smith challenged the prospective juror for cause, because he believed that the prospective juror could not be fair due to the traumatic event he experienced at a young age. The court stated:

> I believe I asked him the very question, [] of knowing that that kind of traumatic experience must last someone their entire life, did he feel that that would affect [his] ability to be fair and impartial in this case, and he said no. I also have to say that if I'm not mistaken, I don't think that either counsel asked any further questions of him at that point and I think that that was the time to explore that issue. I assume that the jurors are answering truthfully. He volunteered this information to us. I take him at his word, unless I'm hearing something other than that, that he could not be fair and impartial. And, in addition, this happened quite a number of years ago is also another factor that I think - - I see no basis for that challenge for cause.

Smith used a peremptory challenge to strike the prospective juror from the venire.

At a pretrial proceeding, the court reminded the parties that it would adhere to its rulings from the first trial, allowing Flood to testify about the statements the unidentified individuals present at the crime scene made to him, that "Chicago" was one of the perpetrators of the crime. The court noted that the statements of those individuals would be "deemed admissible as part of the narrative of the events and to indicate why the officers focused their investigation on a person named 'Chicago.'" Additionally, the court denied Smith's request to cross-examine D. W. about whether she was a prostitute in order to support his defense that she traded sex with him for crack cocaine. The court stated it would apply the state's rape shield law because: (i) Smith did not present any information sufficient to permit the court to avoid the rape shield law in the interest of justice; (ii) D. W. had no record of conviction for prostitution; and (iii) Smith had ample opportunity, at the trial, to question D. W. about whether she engaged in consensual sex on the night she was assaulted.

On June 21, 2000, the jury convicted Smith for two counts of first-degree rape and two counts of second-degree assault. On July 27, 2000, the court sentenced Smith, as a predicate violent felony offender, to consecutive terms of 25 and 15 years imprisonment for the two rape convictions and concurrent terms of 5 and 7 years imprisonment for the two assault convictions, to run concurrently with each other and with the sentences for the rape convictions. Smith made a motion for the court to set aside his sentence. On April 23, 2003, the motion was granted because the court determined Smith was not a predicate violent felony offender. The court re-sentenced Smith to consecutive terms of 25 and 10 years imprisonment on the two rape convictions and 5 to7 years imprisonment on the two assault convictions, to run consecutively to the 25-year sentence imposed for one of the first-degree rape convictions and concurrently with the sentences imposed for the remaining convictions.

Smith appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, First Department. He asked that court to upset his conviction because: (1) the trial court erred in denying his for cause challenge to the prospective juror who was not certain that he could be fair and impartial; (2) the trial court erred in permitting Flood to testify that several persons, who did not testify at the trial, told him that Smith committed the offenses, and the admission of that hearsay evidence violated his rights to confront witnesses against him and to due process; (3) the trial court erred in precluding his cross-examination of D. W. about whether she was a prostitute, where consensual sex was his defense; and (4) he was sentenced in violation of his constitutional right not to have his sentence enhanced by improper judicial fact-finding and his sentence was excessive.

The Appellate Division affirmed the conviction finding that the trial court denied Smith's for cause challenge properly because the prospective juror's response, "that he did not 'think' that a family tragedy would affect his ability to be impartial," was not equivocal, especially in light of his subsequent declarations of his impartiality. It found further that the trial court admitted properly limited testimony by Flood, respecting remarks made to him by unidentified individuals concerning the identity of the second perpetrator, because that testimony was not admitted into evidence for the truth of the matter asserted. It was admitted into the trial record to complete the narrative of events and to explain why the police focused attention on Smith. The Appellate Division determined that Smith's Confrontation Clause claim was not preserved for appellate review but noted that if it were to review the claim, it would find no violation of Smith's confrontation right occurred because the statements were properly received in evidence for a relevant purpose other than the truth of the matter asserted and, furthermore, the statements were not testimonial, as contemplated by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).

The Appellate Division also found that the trial court applied the state's rape shield law properly to preclude Smith's counsel from asking the victim whether she had engaged in prostitution and exchanged sex for narcotics because no evidence existed that the victim had ever been convicted for prostitution or any other crime. Furthermore, the Appellate Division determined, the trial court imposed consecutive sentences for the two rape convictions properly and the trial court did not violate Smith's constitutional rights, when imposing his sentence, because it did not engage in any fact-finding, but instead made a legal determination based on the facts already found by the jury. Consequently, the Appellate Division perceived no basis for

7

reducing Smith's sentence. See People v. Smith, 27 A.D.3d 242, 233-34, 810 N.Y.S.2d 193, 195 (App. Div. 1st Dep't 2006). On June 27, 2006, the New York Court of Appeals denied Smith's request for leave to appeal to that court. See People v. Smith, 7 N.Y.3d 763, 819 N.Y.S.2d 888 (2006). The instant petition followed.

## DISCUSSION

*Fourth Amendment Claim*

Smith asserts, after they informed him that he was not under arrest, the police handcuffed him and took him to the local precinct, where they told him he could not leave and, without: (a) advising him of his constitutional rights; and (b) obtaining his consent, placed a swab in his mouth in order to obtain a sample of his DNA, in violation of his Fourth Amendment rights. The respondent contends the petitioner's Fourth Amendment claim is barred because he: (i) failed to exhaust the claim in the state courts; and (ii) availed himself of the applicable New York procedure for addressing alleged Fourth Amendment violations.

Where a state has a mechanism for adjudicating a Fourth Amendment claim, like the petitioner's claim concerning the seizure of his DNA by the police, habeas corpus review of the claim is precluded. In Stone v. Powell, 428 U.S. 465, 481-82, 96 S. Ct. 3037, 3046 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." In this judicial circuit, federal courts can review the Fourth Amendment claims made by state habeas corpus petitioners only in one of two instances: "(a) if the state has provided no corrective procedures at all to redress the

alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

CPL §§ 710, et seq. provide a procedure for litigating Fourth Amendment claims. In the case at bar, the trial court provided Smith a full and fair opportunity to litigate, inter alia, the claim that his DNA sample was unlawfully taken by the police, when it held a combined Huntley,[4] Mapp,[5] Wade[6] and Dunaway[7] hearing. Since Smith does not allege that he was precluded from using the procedure New York provides for challenging the legality of the seizure of a DNA sample, due to an unconscionable breakdown in the underlying procedure, the Court finds that Smith's claim, that his DNA sample was obtained by the police unlawfully, is not cognizable in this habeas corpus proceeding.

*Standard of Review*

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus where a state court has adjudicated the merits of a

---

[4]A pretrial hearing, held pursuant to People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838 (1965), is used to determine the voluntariness of inculpatory statements made by a criminal defendant to law enforcement officers.

[5]A pretrial hearing, held pursuant to Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684 (1961), is used to determine whether physical evidence was obtained in violation of a criminal defendant's Fourth Amendment right to be free from an unreasonable search or seizure.

[6]A pretrial hearing, held pursuant to United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926 (1967), is used to determine whether the pretrial identification of a criminal defendant resulted from impermissibly suggestive law enforcement procedures.

[7]A pretrial hearing, held pursuant to Dunaway v. New York, 442 U.S. 200, 99 S. Ct. 2248 (1979), is used to determine whether probable cause existed for a criminal defendant's arrest.

claim raised in a federal habeas corpus petition only if the state court's adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. See 28 U.S.C. § 2254 (d). The Supreme Court has interpreted "the contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) as having independent meaning. See Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519 (2000). A state-court decision is "contrary to" the Supreme Court's precedent: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law;" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. Id. at 405, 120 S. Ct. at 1519. A state-court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court, if: (1) "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;" or (2) "the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407, 120 S. Ct. at 1520. If a state prisoner's federal claim was adjudicated on the merits, a federal court must presume any determination of a factual issue made by a state court to be correct and a habeas corpus petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

*Unfair and Impartial Prospective Juror Claim*

Smith claims the trial court erred when it empaneled a juror who stated he did not think he could be fair and impartial. The respondent contends that, under a liberal interpretation of the petition, Smith claims his constitutional rights were violated when the trial court denied his for cause challenge to the prospective juror, who had equivocated about whether he could be impartial, prompting Smith to use a peremptory challenge to strike the prospective juror from the venire, and, thereby, to exhaust his allotted peremptory challenges. According to the respondent, the Appellate Division's rejection of this claim, on the merits, was neither contrary to nor an unreasonable application of clearly established federal law.

Smith's claim concerning the prospective juror, who stated he did not think his father's murder and the assault on his mother, twenty-years earlier, would affect his ability to be fair and impartial, was reviewed and rejected, on the merits, by the Appellate Division. The record demonstrates that the prospective juror, whose impartiality Smith challenges here, was not empaneled. Smith has failed to present any evidence to rebut the presumption of correctness of the following factual determinations made by the Appellate Division:

> The court properly denied defendant's challenge for cause. The resettled record establishes that the prospective juror at issue responded that he did not "think" that a family tragedy would affect his ability to be impartial. This response was not equivocal, particularly when viewed together with the panelist's subsequent declarations of his impartiality.

Moreover, Smith has failed to demonstrate that the Appellate Division's decision is: (i) contrary to or an unreasonable application of <u>Ross v. Oklahoma</u>, 487 U.S. 81, 108 S. Ct. 2273 (1988), the Supreme Court precedent that governs the Sixth and Fourteenth Amendment implications of the

11

trial court's failure to remove a prospective juror for cause and the petitioner's subsequent use of a peremptory challenge to strike the prospective juror; or (ii) based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. Therefore, the Court finds that Smith has not met the statutory burden imposed on him, and that granting a writ of habeas corpus on this claim is not warranted. See 28 U.S.C. § 2254(d) & § 2254(e)(1).

*Hearsay and the Confrontation Right Claims*

Smith asserts the prosecution failed to produce "the witness who said to the police that Chicago [] was the man they wanted." The respondent contends that, under a liberal interpretation of the petition, Smith claims the trial court erred, in violation of his rights to due process and to confrontation, when it permitted Flood to testify, at trial, that witnesses, who did not appear at the trial, informed him that a man, known to them as "Chicago," was one of the victim's attackers. According to the respondent, the Appellate Division: (i) rejected properly Smith's due process claim on the merits; and (ii) found correctly that Smith's confrontation claim was both procedurally barred, from appellate review, and meritless.

The Appellate Division reviewed and rejected, on the merits, Smith's claim that the remarks made to Flood, by unidentified individuals who did not appear at the trial, were hearsay statements, improperly admitted into evidence by the trial court. Smith has failed to present any evidence to rebut the presumption of correctness that attaches to the factual determination made by the Appellate Division concerning his hearsay claim. See 28 U.S.C. § 2254(e)(1). Additionally, "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 480 (1991)(citation omitted). An evidentiary ruling,

which is a matter of state law, when erroneous, may provide a basis for habeas corpus relief only if a petitioner establishes that it "so infused the trial with unfairness as to deny due process of law." Id. at 75, 112 S. Ct. at 484 (citation omitted). In light of the trial court's detailed instructions to the jury about the purpose for which the challenged statements were received in evidence, it cannot be said, and Smith has failed to demonstrate, that the trial court's evidentiary ruling was erroneous or that it infected his entire trial such that the resulting conviction violated due process.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state-law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553-54 (1991). A procedural default in a state court will bar federal habeas review where "the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043 (1989) (citation omitted). Moreover, "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of a federal claim." Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (citations omitted).

A state procedural rule is "independent" of the merits of a federal-law claim when the state court actually relies on the procedural bar as an independent basis for its disposition. See Harris, 489 U.S. at 260-61, 109 S. Ct. at 1042. The Appellate Division declined to review the petitioner's claim, that the trial court violated the Confrontation Clause by admitting hearsay

13

evidence into the trial record, because this claim was "unpreserved" for judicial review. Although the Appellate Division indicated how it would dispose of the federal-law claim on the merits if it had been preserved for appellate review, it rested its decision on the petitioner's failure to comply with New York's contemporaneous-objection rule, a procedural ground that is independent of these federal-law claims. However, "[b]efore accepting a procedural bar defense, a federal court must examine the adequacy of the alleged procedural default." Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003).

A state contemporaneous-objection requirement violation is an adequate procedural ground for barring review of a claim in a federal habeas corpus proceeding, if it is established that at the time the procedural bar is applied: (1) "[the state] actually had a contemporaneous-objection requirement for claims such as [the petitioner] now advances;" and (2) "that this requirement was actually enforced by the state courts themselves." Washington v. Harris, 650 F.2d 447, 451 (2d Cir. 1981), cert. denied 455 U.S. 951, 102 S. Ct. 1455 (1982); see Ford v. Georgia, 498 U.S. 411, 424, 111 S. Ct. 850, 857-58 (1991). In the habeas corpus context, three guiding factors are considered when determining the adequacy of a state procedural rule: (1) whether the procedural violation actually affected the trial court's ruling; (2) whether state case law indicated that compliance with the procedural rule was required in the specific circumstance presented; and (3) whether the defendant complied substantially with the rule, in light of the realities of trial. See Cotto, 331 F.3d at 240.

CPL § 470.05 requires that "an objection to a ruling or instruction of a criminal court must be raised contemporaneously with the challenged ruling or instruction in order to preserve the objection for appellate review," and that the objection must be "made with sufficient

14

specificity to enable the trial court to respond." See Green v. Travis, 414 F.3d 288, 294-95 (2d Cir. 2005) (citations omitted). Smith objected to the introduction of the out-of-court statements made to Flood by unidentified individuals on the ground of "impermissible hearsay" that is "too prejudicial to the defendant under the circumstances." Smith failed to make a specific objection on the ground that the admission of the above-noted statements violated his Confrontation Clause right. However, Smith's failure to object on the ground of the Confrontation Clause violation would not have affected the trial court's evidentiary ruling with respect to the admission of the statements in question because the trial court's admission of these statements was for a purpose other than establishing the truth of the matter asserted. Therefore, the Confrontation Clause was not implicated. See Crawford v. Washington, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 1369 n.9 (2004)(citing Tennessee v. Street, 471 U.S. 409, 414, 105 S. Ct. 2078, 2081-82 [1985]). Consequently, the state contemporaneous-objection requirement violation is an adequate procedural ground for barring review of Smith's Confrontation Clause.

A procedural default may be excused by a court if a habeas corpus petitioner can show cause for the default and prejudice resulting from it, or that the court's failure to consider the federal claim will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991). To establish cause, a petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). Objective factors that constitute cause include, inter alia, "some interference by officials" that made compliance with the applicable state procedural rule impracticable or "a showing that the factual or legal basis for a claim was not reasonably available to counsel." Id.

15

Smith has failed to establish cause for his procedural default because he did not present any evidence demonstrating some objective factor external to the defense that impeded compliance with the state's procedural rule. Moreover, Smith does not assert that the court's failure to consider his Confrontation Clause claim will result in a fundamental miscarriage of justice. Therefore, a review of Smith's Confrontation Clause claim is not warranted.

*Erroneously Applied Rape Shield Law Claim*

Smith asserts the trial court "allowed [Assistant District Attorney Plansky] to break the rape shield law," after telling defense counsel she would not do so. The respondent contends that, under a liberal interpretation of the petition, Smith claims that the trial court's invocation of the state's rape shield law to limit defense counsel's cross-examination of the victim violated his right to present a defense. According to the respondent, the Appellate Division's decision with respect to this claim was not contrary to or an unreasonable application of clearly established federal law.

The Appellate Division reviewed and rejected, on the merits, Smith's claim concerning the trial court's application of the state's rape shield law to preclude Smith from asking the victim whether she engaged in prostitution or exchanged sex for narcotics. Smith has failed to present any evidence to rebut the presumption of correctness of the factual determinations made by the Appellate Division that: (i) the rape shield law does not contain an exception for evidence of acts of prostitution; (ii) no evidence existed that the victim had ever been convicted for prostitution or anything else; and (iii) Smith had ample opportunity to present his defense that he and the victim had engaged in consensual sex.

The state's rape shield law is an evidentiary rule limiting the admissibility of evidence of a victim's sexual conduct in sex-offense cases. See CPL § 60.42. As noted above, an erroneous evidentiary ruling may provide a basis for habeas corpus relief only if a petitioner establishes that it "so infused the trial with unfairness as to deny due process of law." Estelle, 502 U.S. at 75, 112 S. Ct. at 484. Smith appears to claim, in the instant petition, that the trial court erred when it allowed the prosecutor to break the rape shield law, while preventing him from doing so. However, the trial record is devoid of any evidence that the prosecutor asked the victim any questions pertaining to acts of prostitution or the exchange of sex for narcotics. In light of the lack of evidence in the trial record establishing that D. W. was convicted for prostitution or exchanged sex for narcotics and Smith's opportunity, during the trial, to pursue his defense of consensual sex, it cannot be said, and Smith has failed to demonstrate, that the trial court's application of the state's rape shield law was erroneous or that it infected his entire trial such that the resulting conviction violated due process. Therefore, the Court finds that granting a writ of habeas corpus on this claim is not warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that the petition be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 500 Centre Street, Room 650, New York, New York, 10007, and to the chambers of the

undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Berman. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Reynoso, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
December 6, 2007

Respectfully submitted,

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Michael Smith
Malanda Chanda